UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

NML CAPITAL, LTD.,

                               Plaintiff,

                - against -                       14 Civ. 8601 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

---------------------------------------------------------------------- X

FFI FUND, LTD., and FYI, LTD.,

                          Plaintiffs,

                - against -                       14 Civ. 8630 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

---------------------------------------------------------------------- X

EM LTD.,

                               Plaintiff,

                - against -                       14 Civ. 8303 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

----------------------------------------------------------------------X *(captions continue on following page)*

## MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION TO MOTIONS BY 526 PLAINTIFFS IN 37 ACTIONS SEEKING PARTIAL SUMMARY JUDGMENT

```
----------------------------------------------------------------X
PEREZ, et al.,                                    :
                                                  :
                        Plaintiffs,               :
                                                  :
            - against -                           :   14 Civ. 8242 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
----------------------------------------------------------------X
NML CAPITAL, LTD.,                                :
                                                  :
                        Plaintiff,                :
                                                  :
            - against -                           :   14 Civ. 8988 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
----------------------------------------------------------------X
AURELIUS CAPITAL PARTNERS, LP, et al.,            :
                                                  :
                        Plaintiffs,               :
                                                  :
            - against -                           :   14 Civ. 8946 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
----------------------------------------------------------------X
BLUE ANGEL CAPITAL I LLC,                         :
                                                  :
                        Plaintiff,                :
                                                  :
            - against -                           :   14 Civ. 8947 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                        Defendant.                :
----------------------------------------------------------------X
```

```
-------------------------------------------------------X
LIGHTWATER CORP. LTD.,                     :
                                           :
                        Plaintiff,         :
                                           :
            - against -                    :   14 Civ. 4092 (TPG)
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
-------------------------------------------------------X
OLD CASTLE HOLDINGS, LTD.,                 :
                                           :
                        Plaintiff,         :
                                           :
            - against -                    :   14 Civ. 4091 (TPG)
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
-------------------------------------------------------X
SETTIN,                                    :
                                           :
                        Plaintiff,         :
                                           :
            - against -                    :   14 Civ. 8739 (TPG)
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
-------------------------------------------------------X
CAPITAL VENTURES INTERNATIONAL,            :
                                           :
                        Plaintiff,         :
                                           :
            - against -                    :   14 Civ. 7258 (TPG)
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
-------------------------------------------------------X
```

```
-------------------------------------------------------------------X
ADAMI, et al.,                                    :
                                                  :
                                Plaintiffs,       :
                                                  :
                   - against -                    :   14 Civ. 7739 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                                Defendant.        :
-------------------------------------------------------------------X
CAPITAL MARKETS FINANCIAL SERVICES, et al.,       :
                                                  :
                                Plaintiffs,       :
                                                  :
                   - against -                    :   15 Civ. 0710 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                                Defendant.        :
-------------------------------------------------------------------X
FOGLIA, et al.,                                   :
                                                  :
                                Plaintiffs,       :
                                                  :
                   - against -                    :   14 Civ. 8243 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                                Defendant.        :
-------------------------------------------------------------------X
PONS, et al.,                                     :
                                                  :
                                Plaintiffs,       :
                                                  :
                   - against -                    :   13 Civ. 8887 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                                Defendant.        :
-------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
GUIBELALDE, et al.,                          :
                                             :
                      Plaintiffs,            :
                                             :
          - against -                        :    11 Civ. 4908 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------------------------------X
DORRA, et al.,                               :
                                             :
                      Plaintiffs,            :
                                             :
          - against -                        :    14 Civ. 10141 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------------------------------X
BELOQUI, et al.,                             :
                                             :
                      Plaintiffs,            :
                                             :
          - against -                        :    14 Civ. 5963 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------------------------------X
TORTUS CAPITAL MASTER FUND, LP,              :
                                             :
                      Plaintiff,             :
                                             :
          - against -                        :    14 Civ. 1109 (TPG)
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                      Defendant.             :
-------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
TORTUS CAPITAL MASTER FUND, LP,                :
                                               :
                    Plaintiff,                 :
                                               :
            - against -                        :   14 Civ. 3127 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                    Defendant.                 :
-------------------------------------------------------------------X
TRINITY INVESTMENTS LIMITED,                   :
                                               :
                    Plaintiff,                 :
                                               :
            - against -                        :   14 Civ. 10016 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                    Defendant.                 :
-------------------------------------------------------------------X
MONTREUX PARTNERS, L.P.,                       :
                                               :
                    Plaintiff,                 :
                                               :
            - against -                        :   14 Civ. 7171 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                    Defendant.                 :
-------------------------------------------------------------------X
LOS ANGELES CAPITAL,                           :
                                               :
                    Plaintiff,                 :
                                               :
            - against -                        :   14 Civ. 7169 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
                    Defendant.                 :
-------------------------------------------------------------------X
```

```
--------------------------------------------------------------X
CORDOBA CAPITAL,                            :
                                            :
                      Plaintiff,            :
                                            :
              - against -                   :      14 Civ. 7164 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                      Defendant.            :
--------------------------------------------------------------X
WILTON CAPITAL,                             :
                                            :
                      Plaintiff,            :
                                            :
              - against -                   :      14 Civ. 7166 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                      Defendant.            :
--------------------------------------------------------------X
MCHA HOLDINGS, LLC,                         :
                                            :
                      Plaintiff,            :
                                            :
              - against -                   :      14 Civ. 7637 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                      Defendant.            :
--------------------------------------------------------------X
MCHA HOLDINGS, LLC,                         :
                                            :
                      Plaintiff,            :
                                            :
              - against -                   :      14 Civ. 10064 (TPG)
                                            :
THE REPUBLIC OF ARGENTINA,                  :
                                            :
                      Defendant.            :
--------------------------------------------------------------X
```

```
------------------------------------------------------------------X
ANDRAREX LTD.,                                        :
                                                      :
                              Plaintiff,              :
                                                      :
                       - against -                    :    14 Civ. 9093 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                              Defendant.              :
------------------------------------------------------------------X
CLARIDAE, et al.,                                     :
                                                      :
                              Plaintiffs,             :
                                                      :
                       - against -                    :    14 Civ. 10201 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                              Defendant.              :
------------------------------------------------------------------X
ARAG-A LIMITED, et al.,                               :
                                                      :
                              Plaintiffs,             :
                                                      :
                       - against -                    :    14 Civ. 9855 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                              Defendant.              :
------------------------------------------------------------------X
ATTESTOR MASTER VALUE FUND LP,                        :
                                                      :
                              Plaintiff,              :
                                                      :
                       - against -                    :    14 Civ. 5849 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                              Defendant.              :
------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
ANGULO, et al.,                                    :
                                                   :
                          Plaintiffs,              :
                                                   :
                   - against -                     :      15 Civ. 1470 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------------------------X
LAMBERTINI, et al.,                                :
                                                   :
                          Plaintiff,               :
                                                   :
                   - against -                     :      15 Civ. 1471 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------------------------X
GMO EMERGING COUNTRY DEBT INVESTMENT               :
FUND PLC,                                          :
                                                   :
                          Plaintiff,               :
                                                   :      14 Civ. 8665 (TPG)
                   - against -                     :
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------------------------X
GMO EMERGING COUNTRY DEBT INVESTMENT               :
FUND PLC,                                          :
                                                   :
                          Plaintiff,               :
                                                   :      14 Civ. 8666 (TPG)
                   - against -                     :
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                          Defendant.               :
-------------------------------------------------------------------X
```

```
-------------------------------------------------------------------X
GMO EMERGING COUNTRY DEBT INVESTMENT   :
FUND PLC,                              :
                                       :
                         Plaintiff,    :
                                       :   14 Civ. 8667 (TPG)
            - against -                :
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
                         Defendant.    :
-------------------------------------------------------------------X
BANCA ARNER S.A., et al.,              :
                                       :
                         Plaintiffs,   :
                                       :
            - against -                :   15 Civ. 1508 (TPG)
                                       :
THE REPUBLIC OF ARGENTINA,             :
                                       :
                         Defendant.    :
-------------------------------------------------------------------X
```

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................ 5

   A. The Court Grants *Pari Passu* Relief in Five Pre-Judgment Cases ...................... 5

   B. Plaintiffs' Post-Judgment and Pre-Judgment Motions Here ............................. 11

ARGUMENT ................................................................................................................... 13

  I. THE POST-JUDGMENT PLAINTIFFS ARE NOT ENTITLED TO SUMMARY
    JUDGMENT ........................................................................................................ 13

   A. The Post-Judgment Plaintiffs' Claims Are Barred By The Doctrine Of Res Judicata 13

   B. The Post Judgment Plaintiffs' Claims Are Barred By The Doctrine Of Merger ....... 22

   C. Under Any Interpretation Of The *Pari Passu* Clause, There Is No Breach With
   Respect To The Post-Judgment Plaintiffs .................................................................. 24

  II. TWENTY-THREE PLAINTIFFS' MOTIONS MUST BE DENIED BECAUSE THEY
    HAVE NOT ADEQUATELY DEMONSTRATED THAT THEY OWN THE BOND
    INTERESTS THEY PURPORT TO HOLD .................................................................. 27

   A. Twenty Pre-Judgment Plaintiffs Have Not Submitted The Requisite Proof of Ownership
    27

   B. The GMO Plaintiffs' Motions Must Be Denied Because The 1994 FAA's *Pari Passu*
   Clause Does Not Apply To Their Bonds ..................................................................... 28

  III. ALL PLAINTIFFS ARE OTHERWISE NOT ENTITLED TO THE SUMMARY
    JUDGMENT ORDERS THEY SEEK .......................................................................... 30

   A. Plaintiffs' Motions Must Be Denied To The Extent They Exceed The Second
   Circuit's Prior Rulings In This Litigation ................................................................... 30

   B. The Republic's Arguments Are Not Barred By Collateral Estoppel ......................... 32

   C. The Republic Has Not Breached The *Pari Passu* Clause As It Has Long Been
   Understood By The Market ......................................................................................... 32

CONCLUSION ................................................................................................................ 39

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1608(d) ......................................................................................... 28

28 U.S.C. § 1609 .............................................................................................. 37

28 U.S.C. § 1610(a) ......................................................................................... 37

**Cases**

*Amaprop Ltd. v. Indiabulls Financial Services Ltd.*,
Nos. 10 Civ. 1853, 11 Civ. 2001 (PGG) (JCF), 2012 WL 4801452
(S.D.N.Y. Oct. 5, 2012) ................................................................................... 24

*Bryant v. New York State Educ. Dep't*,
692 F.3d 202 (2d Cir. 2012).............................................................................. 38

*CIBC Bank and Trust Co. (Cayman) Ltd. v. Banco Centra do Brasil*,
886 F. Supp. 1105, (S.D.N.Y. 1995) ............................................................... 26

*Colella v. Republic of Argentina*,
No. 04 Civ. 2170 (TPG), 2006 WL 399449 (S.D.N.Y. Feb. 21, 2006)............ 28

*Craven v. Rigas*,
85 A.D.3d 1524 (3d Dep't 2011), *appeal dismissed*, 17 N.Y.3d 932 (2011) .... 22-23

*Elliott Assocs. L.P. v. Banco de la Nacion,* General Docket No. 2000/QR/92)
(Court of Appeals of Brussels, 8th Chamber, Sept. 26, 2000) ......................... 6

*Ellis v. Abbey & Ellis*,
742 N.Y.S.2d 225 (1st Dep't 2002) .................................................................. 17

*Export-Import Bank of the Republic of China v. Grenada*,
No. 13 Civ 1450 (HB), 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013)............ 13, 19

*Freeman v. Marine Midland Bank-New York*,
419 F. Supp. 440 (E.D.N.Y. 1976) .................................................................. 22

*Hahl v. Sugo*,
169 N.Y. 109 (1901) ........................................................................................ 18

*Hellstern v. Hellstern*,
279 N.Y. 327 (1938) ........................................................................................ 18

*HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*,
No. 07 Civ. 553A, 2009 WL 385474 (W.D.N.Y. Feb. 12, 2009), *aff'd sub nom.*, *In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011).................................................. 20

*In re Hunter*,
4 N.Y.3d 260 (2005) ....................................................................... 13

*Interoceanica Corp. v. Sound Pilots, Inc.*,
107 F.3d 86 (2d Cir. 1997)................................................................. 26

*Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*,
15 N.Y.2d 141 (1965) .................................................................. 22, 24

*Jean-Gilles v. Cnty. of Rockland*,
463 F. Supp. 2d 437 (S.D.N.Y. 2006).................................................... 21

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.*,
937 F.2d 729 (2d Cir. 1991)............................................................... 32

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009)................................................................. 38

*Kinsman v. Turetsky*,
21 A.D.3d 1246, 804 N.Y.S.2d 430 (3d Dep't 2005)................................... 20

*Macrotecnic Int'l Corp. v. Republic of Argentina*,
No. 02 Civ. 5932 (TPG) (S.D.N.Y. Dec. 12, 2003), ECF No. 29 ..................... 6

*Mallory v. Leach*,
23 How. Pr. 507 (Sup. Ct. N.Y. Cnty. 1862) ........................................... 22

*Matter of Reilly v. Reid*,
45 N.Y.2d 24 (1978) ....................................................................... 21

*Mazzini v. Republic of Argentina*,
No. 03 Civ. 8120 (TPG), 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005) ............. 27

*Mudholkar v. Univ. of Rochester*,
261 F. App'x 320 (2d Cir. 2008) ......................................................... 21

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012)............................................................ <u>passim</u>

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013)............................................................... 10

*NML Capital, Ltd. v. Republic of Argentina*,
No. 02 Civ. 3804 (TPG), 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005), *aff'd sub nom.*,
*EM Ltd. v. Republic of Argentina*, 131 F. App'x 745 (2d Cir. 2005) ................................. 7

*NML Capital Ltd., v. Republic of Argentina*,
No. 08 Civ. 06978 (TPG), 2011 WL 9522565 (S.D.N.Y. Dec. 7, 2011) .......................... 9

*O'Brien v. City of Syracuse*,
54 N.Y.2d 353 (1981) .................................................................................. 17

*Pons v. People's Republic of China*,
666 F. Supp. 2d 406 (S.D.N.Y. 2009)................................................................ 17-19

*Republic of Argentina v. NML Capital, Ltd.*,
134 S. Ct. 2819 (2014)................................................................................. 11

*Scala v. Sequor Grp., Inc.*,
No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995)............................. 12

*Smith v. Russell Sage Coll.*,
54 N.Y.2d 185 (1981) ................................................................................. 14, 16

*U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*,
950 N.Y.S.2d 494 (Sup. Ct. N.Y. Cnty. 2012),
*aff'd*, 105 A.D.3d 639 (1st Dep't 2013)............................................................. 21

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
927 N.Y.S.2d 59 (1st Dep't 2011) ..................................................................14, 17, 19

*Vivenzio v. City of Syracuse*,
611 F.3d 98 (2d Cir. 2010)........................................................................... 13, 22

*Walters v. Industrial and Commercial Bank of China, Ltd.*,
651 F.3d 280 (2d Cir. 2011)............................................................................ 37

*Wells Fargo Bank Nw., N.A. v. Energy Ammonia Transp. Corp.*,
No. 01 Civ. 5861 (JSR), 2002 WL 1343757 (S.D.N.Y. June 18, 2002)............................ 29

*Westinghouse Credit Corp. v. D'Urso*,
371 F.3d 96 (2d Cir. 2004).......................................................................... 23, 25

## Other Authorities

19 A.L.R. Fed. 709.................................................................................... 13

30 Williston on Contracts § 76:52 (4th ed. 2014)................................................... 23

Republic of Argentina, Annual Report (Form 18-K) (Oct. 1, 2010), *available at*
https://www.sec.gov/Archives/edgar/data/914021/000090342309000873/roa-
18k_1026.htm. ................................................................................................ 8

Mark Weidemaier, et al. *Origin Myths, Contracts, and the Hunt for Pari passu,* 38 Law
& Soc. Inquiry 72, 84, 101–02 (2013) ........................................................... 5

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiffs' motions for partial summary judgment, dated February 3, 2015 through March 3, 2015, seeking relief in connection with the *pari passu* clause on behalf of 526 more plaintiffs holding more than $5.4 billion in additional money judgments or claims.[1]

## PRELIMINARY STATEMENT

The existing *pari passu* injunctions have had their intended effect of blocking contractually owed interest payments to the holders of some $28 billion in outstanding principal amount of restructured Republic indebtedness.  That these holders of restructured debt (the "Exchange Bondholders") – who constitute approximately 92% of the debt that originally defaulted – had accepted meaningful haircuts, consistent with U.S. policy and international practice, because they recognized the Republic's inability to pay them in full, mattered not to plaintiffs:  plaintiffs' whole strategy was to free ride on the Exchange Bondholders' forbearance[2] in the hope of garnering windfall profits for themselves.  Nor did it matter to plaintiffs that the injunctions, in unprecedented fashion, blocked these innocent third parties from receiving funds that they legally own, unless and until plaintiffs received these windfall profits:  that was the whole point of the exercise.  Apparently of least concern to plaintiffs was the fact that the Republic had restructured its unsustainable debt, not based on some illegitimate whim, but as the

---

[1] As so-ordered by the Court, the Republic opposes here all motions for partial summary judgment filed between February 3, 2015 and March 2, 2015 that rely in whole or in part on NML Capital, Ltd.'s ("NML") memorandum of law filed in the above-captioned action on February 3, 2015 ("Pls. Br.").  *See* Mem. Endorsement, *NML Capital Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (S.D.N.Y. Feb. 17, 2015), ECF No. 12.  (Although plaintiffs in *Banca Arner S.A., et al. v. Republic of Argentina*, No. 15 Civ. 1508, filed their motion for partial summary judgment on March 3, 2015, the Republic opposes their motion here as well.)  EM Ltd. is the only plaintiff that makes additional arguments, to which the Republic responds to the extent necessary.  *See* Mem. of Law in Supp. of Pl's Mot. for Partial Summ. J., *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG) (S.D.N.Y. Feb. 4, 2015), ECF No. 9.  Two charts listing the moving plaintiffs and the judgments or debt that they purport to hold, the "Pre-Judgment Plaintiffs Chart" and "Post-Judgment Plaintiffs Chart,"are attached as Exhibits A and B to the Declaration of Elizabeth M. Hanly, dated March 17, 2015, as are all other referenced exhibits.

[2] As it turned out, the Exchange Bondholders, because of the GDP-linked warrants that were part of the exchange, actually received a good financial return under the difficult circumstances Argentina faced.

only way out of the worst financial collapse in its modern history:  for plaintiffs, that human and social catastrophe was just an opportunity to make more money.  That the Republic could not pay in full, and had tried its best to resolve the claims against it as equitably as possible, *i.e.*, by not preferring one creditor to another – and had settled the claims, not only of approximately 92% of its bondholders, but also of ICSID claimants and official sector creditors like the International Monetary Fund ("IMF") and Paris Club[3] that held billions of dollars of more debt – was contemptuously dismissed by plaintiffs as the protestations of a "rogue" and "deadbeat."

Plaintiffs, in short, adroitly constructed a counterfactual narrative that ignored Argentina's financial condition, universally accepted norms of sovereign debt restructuring, and the reality that no restructuring, including Argentina's, ever could be accomplished if each and every holdout was contractually guaranteed the right to veto the restructuring absent full payment of its claims.  Quite simply, there would have been no restructured debt on which to enjoin payment, because there would have been no successful restructuring, if any Exchange Bondholder had seriously believed that the 1994 Fiscal Agency Agreement contract under which it held its bonds would have been construed after the fact to grant such a veto right to any of its fellow bondholders.  In effect, the Court ruled that neither the borrower, nor approximately 92% of the lenders, properly understood their own agreement, and instead adopted a counterintuitive and unworkable interpretation that the financial markets had never before followed and that no New York court had ever sanctioned, in order to achieve a result that accomplished only further harm.

---

[3] In May 2014, the Republic and the Paris Club reached an agreement to resolve the outstanding, defaulted Republic debt that the Paris Club held.  Notably, even plaintiffs have never suggested that this settlement, or payments under it, violated or could violate the *pari passu* clause in the FAA, demonstrating the entirely ad hoc, artificial nature of the reading of the clause that they contrived.

Argentina warned that the existing *pari passu* injunctions previously sought by a purported $1.6 billion of holdout claims would not magically "resolve" the Argentine debt litigation, as those plaintiffs, playing upon the Court's desire for closure, disingenuously told the Court would be the result if it granted those injunctions.  On the contrary, Argentina told the Court that the debt litigation would only multiply.  And that is exactly what has happened.

As predicted by the Republic, the floodgates have now opened:  the original plaintiffs themselves have now moved for "additional" *pari passu* relief, with over 500 other plaintiffs joining in as "me toos."  *See* Pre-Judgment Plaintiffs Chart (Ex. A); Post-Judgment Plaintiffs Chart (Ex. B).  Plaintiffs' demand is clear – to increase by over $5.4 billion – in addition to the $1.6 billion at issue in the existing injunctions – the amount that must be paid to them before any restructured debt holder can receive any payment of scheduled interest.  Not only would these injunctions be impossible to comply with, but the flood of "me toos" demonstrates that if the Court grants the motions, the numbers at issue will only increase still further (there are $10 billion in judgments and claims in this Court alone), making compliance even more unattainable.  No country the size of Argentina could afford to pay that amount without subjecting its economy and citizens to an unacceptable degree of catastrophic risk.

It is for that reason, as the IMF has recently observed, that the global marketplace has expressed great concern that the reading of the *pari passu* clause adopted in this litigation will have a destructive effect on the sovereign debt restructuring process generally, on top of the harm that it is inflicting on the Republic and various third parties, including the Exchange Bondholders.  That concern is echoed by the United Nations, which has observed that the misreading of the *pari passu* clause threatens the capacity of governments to fulfill their human rights obligations, particularly economic, social, and cultural rights, as well as the right to

development.  Plaintiffs' disingenuous earlier assurances that the injunctions would not cause more harm than good have been shown to be wrong, both in the Argentina litigation and in their broader impact on the international financial system.

Now is the time for the Court to draw the line on plaintiffs' extravagant demands. The Court should reject plaintiffs' meritless attempt here to exacerbate the situation further by entering even more damaging orders.

*First*, unlike the actions in which the Court previously found that the Republic breached the *pari passu* clause, the vast majority of plaintiffs here have already obtained money judgments on their claims against the Republic.  Under black letter law, plaintiffs' duplicative "new" claims arising from the same set of facts and the same contract are accordingly barred by the doctrines of res judicata and merger.  Nor, in any event, is there any basis to find that the Republic breached the *pari passu* clause with respect to these plaintiffs under any reading of the provision, as the clause requires only the equal ranking of the Republic's payment obligations "under the Securities" it issued – *not* of judgments entered by a court.

*Second*, separate and apart from the barriers to relief faced by the post-judgment plaintiffs, *all* plaintiffs' motions here must be denied because plaintiffs improperly ask the Court to exceed the scope of the Second Circuit's reading of the *pari passu* clause by adopting an interpretation of the provision that both this Court and the Second Circuit previously refused to accept (the Republic also respectfully maintains that no breach occurred at all under the correct reading of that provision).  Contrary to plaintiffs' contention, the Republic is not barred by collateral estoppel from opposing their motions on that ground, as no court in this proceeding has adopted the erroneous reading of the *pari passu* clause that they now put forth.

Plaintiffs' motions must be denied.

4

## BACKGROUND

### A.    The Court Grants *Pari Passu* Relief in Five Pre-Judgment Cases

The October 19, 1994 Fiscal Agency Agreement ("1994 FAA") governing the series of bonds in which plaintiffs hold (or purport to hold) interests contains a standard clause found in sovereign (and non-sovereign) indebtedness known as the *pari passu* clause.  *See* 1994 FAA (Ex. CC) ¶ 1(c).  That provision states:

> The Securities [issued under the 1994 FAA] will constitute . . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

*Id.*

This is a boilerplate provision that appears in virtually all modern sovereign bonds, often with language that is materially identical to that here.  Mark Weidemaier, et al. *Origin Myths, Contracts, and the Hunt for Pari passu,* 38 Law & Soc. Inquiry 72, 84, 101–02 (2013).  The first sentence of the clause prohibits the Republic from discriminating "among" the bonds issued pursuant to the 1994 FAA ("1994 FAA Bonds") "themselves" and, as NML has noted, "is not at issue" in these proceedings.  Corrected Joint Resp. Br. of Pls.-Appellees, NML Capital, Ltd., Olifant Fund, Ltd., and Varela, et al. at 8, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 23, 2012).  Financial markets have most commonly understood the second sentence "to protect a lender against the risk of legal subordination in favor of another creditor," such as by creating unsecured debt ranking senior in legal right of payment.  Br. of the United States as *Amicus Curiae* in Supp. of Reversal at 11, *NML Capital, Ltd., v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 4, 2012) ("U.S. Br.") (Ex. G).  And

markets have overwhelmingly agreed on what it does not mean:  "a borrower does not violate the *pari passu* clause by electing as a matter of practice to pay certain indebtedness in preference to the obligations outstanding under the agreement in which this clause appears."  *Id.*; *see also* Br. of the United States as *Amicus Curiae* in Supp. of the Republic of Argentina's Pet. for Panel Reh'g and Reh'g *En Banc*, *NML Capital, Ltd., v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Dec. 28, 2012) ("U.S. En Banc Br.") (Ex. E).

As NML notes, the *pari passu* clause has been at issue "[f]rom the earliest stages of this litigation," Pls. Br. at 31 n.8, which stems from the Republic's social, economic, and financial crisis and its subsequent 2001 default on over $80 billion of unsustainable external indebtedness, and the restructuring it announced immediately thereafter.  *See* Registration Statement, Amend. No. 1 at 4 (Jan. 28, 2010) (the "Registration Statement") (Ex. R).  After a Belgian court, at the urging of NML's parent company, adopted *ex parte* a novel interpretation of the *pari passu* clause requiring Peru to pay its defaulted debt *pro rata* with its restructured debt,[4] the Republic anticipated that NML and other plaintiffs might improperly similarly seek to disrupt the Republic's planned debt restructuring.

The Republic thus moved in December 2003 for a declaratory order affirming the true meaning of the *pari passu* clause in order to preclude plaintiffs from invoking that provision when the Republic held its restructuring.  *See* Mem. of Law, *Macrotecnic Int'l Corp. v. Republic of Argentina*, No. 02 Civ. 5932 (TPG) (S.D.N.Y. Dec. 12, 2003), ECF No. 29.  The Republic argued, *inter alia*, that the res judicata and merger doctrines precluded plaintiffs' contract claims for payment in full on their defaulted debt after the Court had already entered judgments for

---

[4] *See Elliott Assocs. L.P. v. Banco de la Nacion*, General Docket No. 2000/QR/92 (Court of Appeals of Brussels, 8th Chamber, Sept. 26, 2000).  Recognizing the destructive nature of the court's finding, Belgium subsequently passed a law making it impossible for a creditor to obtain such injunctions in the future.  *See* Rodrigo Olivares-Caminal, Legal Aspects of Sovereign Debt Repayment 306 (Sweet & Maxwell 2009).

precisely the same claim. *Id.* at 27-29.  In response, NML, which had filed in November 2003 the first of what would ultimately become twelve actions against the Republic on its defaulted debt, argued that the *pari passu* clause required the Republic to pay its creditors "ratably."  *See* Letter from K. Reed to Judge Griesa at 5, *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG) (Jan. 14, 2004 S.D.N.Y.) (Ex. V).[5]  However, based on plaintiffs' representation that they were not seeking *pari passu* "relief" then or at any time in the foreseeable future, *id.* at 2, the Court declined to rule on the issue, reasoning that no justiciable controversy existed.

Over six years later, after it had brought ten more actions, NML moved on October 20, 2010 for partial summary judgment based on its incorrect reading of the *pari passu* clause and for a "ratable payment" injunction.  Strategically, NML moved for this relief only in its three pre-judgment cases, in order to avoid the res judicata and merger problems that the Republic had previously raised.  *See* Hr'g Tr. at 26:25-27:20, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012) (Ex. J) (counsel for NML:  "there might be issues with respect to the interpretation of the *pari passu* clause with respect to cases where there have already been judgments").

By the time NML brought its *pari passu* motion:

- The Republic in 2005 had completed its global, voluntary exchange offer of new, performing bonds for 76% of its non-performing debt, or approximately $62.5 billion in principal amount, making it the largest sovereign debt restructuring in history at that time (the "2005 Exchange Offer").  *See* Registration Statement at 4 (Ex. R).  The new debt was issued to participants in the 2005 Exchange Offer at a discount to the face value of the defaulted debt.

- NML and EM had unsuccessfully attempted to disrupt the 2005 Exchange Offer, without raising the *pari passu* issue.  *See NML Capital, Ltd. v. Republic*

---

[5] NML subsequently moved for entry of judgment in that action – which the Court granted – without raising a *pari passu* claim.  *See* Dkt., *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG).

*of Argentina*, No. 02 Civ. 3804 (TPG), 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005), *aff'd sub nom.*, *EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005).

- Over five years had passed since the Republic had (i) enacted in February 2005 Law 26,017, the so-called "Lock Law,"[6] which prevented the Republic's Executive from unilaterally re-opening the 2005 Exchange Offer or otherwise settling with creditors holding defaulted debt, and (ii) begun servicing in June 2005 the Exchange Bonds issued in connection with its 2005 Exchange Offer. *See* Registration Statement at 4 (Ex. R).

- The Republic had (i) enacted in November 2009 Law 26,547 (which suspended the Lock Law to allow another exchange offer to take place),[7] and (ii) re-opened its 2005 Exchange Offer in 2010 (the "2010 Exchange Offer") to holders of eligible securities who had not tendered in 2005, resulting in owners of approximately $12.8 billion of old debt tendering into the offer and receiving new debt on terms similar to those received by participants in the 2005 Exchange Offer.[8]  With the consummation of the 2010 Exchange Offer, the Republic successfully restructured approximately 92% of its defaulted debt.  *See id*.

NML asserted that the Republic had violated the *pari passu* clause both when it enacted the Lock Law and Law 26,547, under the incorrect theory that that somehow constituted legal subordination of NML's debt, and also – contrary to the position of, *inter alia*, the United States and Federal Reserve – when the Republic made payments of interest to the Exchange Bondholders without paying NML full principal and interest on its defaulted debt, notwithstanding that no New York court or practitioner had ever endorsed that novel reading. *See* Mem. of Law in Supp. of the Mot. by NML Capital, Ltd. For Partial Summ. J. and for Injunctive Relief Pursuant to the Equal Treatment Provision at 14-16, *NML Capital Ltd., v. Republic of Argentina*, No. 08 Civ. 06978 (TPG) (S.D.N.Y. Oct. 20, 2010), ECF No. 230 (Ex. N).  To "remedy" this alleged breach, NML asked the Court for an injunction ordering the

---

[6] *See* Law 26,017, dated Feb. 9, 2005 (Ex. U).

[7] *See* Law 26,547, dated Nov. 18, 2009 (Ex. S).

[8] *See* Republic of Argentina, Annual Report (Form 18-K) (Oct. 1, 2010) at 17, *available at* https://www.sec.gov/Archives/edgar/data/914021/000090342309000873/roa-18k_1026.htm.

Republic to pay NML 100% of the principal and interest due on its bonds when the Republic made a single interest payment on its defaulted debt, and restraining the Republic from making the latter payment unless it made the former.

After a hearing on September 28, 2011, the Court held on December 7, 2011 that the Republic violated the *pari passu* clause when it enacted both the Lock Law and Law 26,547, and by "persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds." *NML Capital Ltd., v. Republic of Argentina*, No. 08 Civ. 06978 (TPG), 2011 WL 9522565, at *2 (S.D.N.Y. Dec. 7, 2011). Two months later, after NML had renewed its motion for injunctive relief, the Court entered in both the three pre-judgment NML actions as well as several pre-judgment "me too" actions[9] – in which plaintiffs together purport to now hold over $1.6 billion in claims against the Republic – injunctions on the terms requested by NML (the "Injunctions"). *See, e.g.*, Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012) (Ex. I).

The Second Circuit affirmed in October 2012 the Court's finding that the Republic had breached the *pari passu* clause, but rather than holding that any single act by the Republic constituted a breach, the Second Circuit ruled that it was "the *combination* of Argentina's executive declarations and legislative enactments" that had violated the provision. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012) ("*NML I*") (emphasis added).[10] With respect to the meaning of the clause, the Court of Appeals held that

---

[9] *See* Order, *Aurelius Capital Master, Ltd., et al. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) (S.D.N.Y. Dec. 13, 2011), ECF No. 164; Order, *Varela, et al. v. Republic of Argentina*, No. 10 Civ. 5338 (TPG) (S.D.N.Y. Dec. 13, 2011), ECF No. 44; Order, *Olifant Fund, Ltd. v. Republic of Argentina*, No. 10 Civ. 9587 (TPG) (S.D.N.Y. Feb. 23, 2012), ECF No. 26.

[10] The Republic was joined on appeal by the United States Government and the New York Clearing House Association, which each submitted *amicus* briefs in support of reversal. *See* Br. for *Amicus Curiae* the Clearing House Association L.L.C. in Supp. of Reversal at 4-5, *NML Capital, Ltd., v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Apr. 4, 2012) (Ex. H) (characterizing plaintiffs' *pari passu* interpretation as "a dramatic and disruptive

"[t]he first sentence [of the clause] ('[t]he Securities will constitute . . . direct, unconditional, unsecured, and unsubordinated obligations . . . .') prohibits Argentina, as bond *issuer*, from formally subordinating the bonds by issuing superior debt." *Id.* at 259 (emphasis in original). The court further ruled that "[t]he second sentence ('[t]he payment obligations . . . shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness.') prohibits Argentina, as bond *payor*, from paying on other bonds without paying on the FAA Bonds." *Id.* (emphasis in original).  The Second Circuit stated that the Republic had breached the first sentence through "the issuance of other superior debt," including by enacting the Lock Law, and had breached the second sentence through "the giving of priority to other payment obligations," by paying the Exchange Bonds but not the 1994 FAA Bonds and "[by the] Republic declar[ing] in its prospectuses" and SEC filings that it had "no intention of resuming payments" and that it was "not in a legal . . . position to pay." *Id.* at 259-60 (internal citations omitted).[11]

Following a remand, in which the Court on November 21, 2012 entered amended injunctions clarifying that the amount that the Republic must pay plaintiffs when it services its restructured debt is 100% of the principal, contractual interest, and statutory interest outstanding on their bonds (the "Amended Injunctions"), the Second Circuit affirmed again.  *See* Amended February 23, 2012 Order ¶ 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Nov. 21, 2012) (Ex. F); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013) ("*NML II*").  Two days after the Supreme Court denied the Republic's

---

departure" from market understanding); U.S. Br. at 12 (Ex. G) ("market understanding has consistently reflected that a borrower does not violate the *pari passu* clause by electing as a matter of practice to pay certain indebtedness in preference to the obligations" subject to the clause (internal citation omitted)).

[11] At one point in its opinion, the Second Circuit appeared to hold in the alternative that the Republic's enactment of the Lock Law breached the *pari passu* clause because it constituted "'legal subordination' of the FAA bonds to others," *NML I*, 699 F.3d at 260, but elsewhere the court expressly stated that it did *not* rule that "'legislative enactment' alone could result in a breach," *id.* at 264 n.16.

petition for *certiorari*, the Second Circuit on June 18, 2014 lifted its stay, and the Amended

Injunctions went into effect.

**B.     Plaintiffs' Post-Judgment and Pre-Judgment Motions Here**

As the Republic had warned on multiple occasions would happen, since the

Amended Injunctions went into effect, the Republic has been inundated with complaints from

additional holdout creditors demanding that they also be granted injunctions preventing the

Republic from servicing its Exchange Bonds unless they are paid 100% of the principal and

interest due on their defaulted bonds.  *See, e.g.*, Pre-Judgment Plaintiffs Chart (Ex. A); Post-

Judgment Plaintiffs Chart (Ex. B).  There is no dispute that it would be impossible for the

Republic to make such payments to all of its holdout creditors, which together hold more than

$15 billion in claims.

Between February 3, 2015 and March 3, 2015, the 526 plaintiffs here brought

37 motions for partial summary judgment against the Republic that, like NML's October 2010

motion, seek a declaration that the Republic has breached the *pari passu* clause in the 1994 FAA.

(Plaintiffs do not ask now for the injunctions they will inevitably demand if they prevail here,

instead stating that they "propose[] that the appropriate remedy for Argentina's violations be

determined in subsequent proceedings."  Pls. Br. at 1.)  These 37 groups of plaintiffs are

comprised of:

> (i) 498 individuals plaintiffs who have already obtained final money judgments
> (or, with respect to three NML actions, have obtained summary judgment for past
> due principal and interest[12]) (the "Post-Judgment Plaintiffs").  Together, the
> Post-Judgment Plaintiffs hold judgments totaling over $5.3 billion, which could
> rise to approximately $6.5 billion with the inclusion of post-judgment interest;
> and

---

[12] *See NML Capital, Ltd. v. Republic of Argentina*, No. 07 Civ. 1910 (TPG) (S.D.N.Y.) ("*NML IV*"); *NML Capital, Ltd. v. Republic of Argentina*, No. 07 Civ. 6563 (TPG) (S.D.N.Y.) ("*NML VI*"); *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 2541 (TPG) (S.D.N.Y.) ("*NML VII*").

> (ii) 28 individual pre-judgment plaintiffs who have initiated new actions against the Republic, seeking both *pari passu* relief *and* final money judgments on their purported holdings of 1994 FAA Bonds in the principal amount of nearly $70 million, without including millions more in interest (the "Pre-Judgment Plaintiffs").

Notwithstanding the Second Circuit's clear holding to the contrary, all plaintiffs argue in their motions that the Republic has violated the *pari passu* clause through any one of several individual, distinct acts, *each* of which, they say, is an independent and completed breach of that provision, including:  the passage of the "Lock Law," Pls. Br. at 6, the Republic's payment of interest to holders of Exchange Bonds, Pls. Br. at 7, and the passage of Law 26,547, Pls. Br. at 8.  Notably, the Post-Judgment Plaintiffs bring these claims *now* despite the fact that they *could have brought them* in their prior actions against the Republic.  For example, 247 Post-Judgment Plaintiffs, who hold over $3.8 billion in judgments, filed their prior complaints against the Republic, in which they failed to allege any purported *pari passu* clause violation, *after* the Republic had enacted the Lock Law on February 10, 2005.[13]  The Court is thus squarely presented here with the issue that NML purposefully avoided earlier in the litigation:  whether plaintiffs' duplicative claims that could have been brought in their prior actions against the Republic are barred by the doctrines of res judicata and merger.

---

[13] One group of Pre-Judgment Plaintiffs, Guibelalde, et al., moved simultaneously with its motion for partial summary judgment for leave to amend its complaint to add a claim for *pari passu* relief three-and-a-half years after filing its original complaint in 2011.  *See* Mem. of Law in Supp. of Pls.' Mot. for Leave to Amend Their Compl., *Guibelalde, et al. v. Republic of Argentina*, No. 11 Civ. 4908 (TPG) (S.D.N.Y. Feb. 23, 2015), ECF No. 13.  For the reasons set forth below, Guibelalde's motion for leave to amend should be denied as futile.  *See Scala v. Sequor Grp., Inc.*, No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *5 (S.D.N.Y. Apr. 14, 1995) (leave to amend denied as futile where plaintiff could not state a claim for relief as a matter of law).

**ARGUMENT**

It is well-settled that a district court may not grant summary judgment unless, "in light of the undisputed facts, 'the movant is entitled to judgment as a matter of law.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (quoting Fed. R. Civ. Pr. 56(c)(2)). For the reasons set forth below, plaintiffs' motions fail as a matter of law and must be denied.

## I.   THE POST-JUDGMENT PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

### A.   The Post-Judgment Plaintiffs' Claims Are Barred By The Doctrine Of Res Judicata

"Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 4 N.Y.3d 260, 269 (2005).[14] This principle "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *Id.*; *see also* David D. Siegel, N.Y. Prac. § 447 (5th ed. 2015). Under New York's transactional analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *In re Hunter*, 4 N.Y.3d at 269 (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)). Under New York law, the test for whether claims arise from the same series of transactions is a "pragmatic" one and "depends on how 'the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"

---

[14] Plaintiffs wrongly assume that federal law governs the res judicata analysis in this case because the prior judgments at issue were entered by a federal court. Where, as here, the prior federal court decisions adjudicate state law claims, state law governs any res judicata analysis. *See* 19 A.L.R. Fed. 709 ("It has been generally held or recognized that state law governs the applicability of the doctrine of res judicata . . . in a federal court action . . . where the issues involved in the prior judgment were issues of state law."). Plaintiffs' reliance on *Export-Import Bank of the Republic of China v. Grenada*, No. 13 Civ. 1450 (HB), 2013 WL 4414875, at *3 (S.D.N.Y. Aug. 19, 2013) ("*Export-Import*"), which mistakenly applies federal law to a state law issue, is accordingly misplaced.

13

*Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192-93 (1981) (quoting Restatement (Second) of Judgments § 24(2) (1978)).

Because there is no dispute that the prior actions resulted in final judgments and involved the same parties, the only questions are whether (i) the Post-Judgment Plaintiffs' new claims are part of the same transaction or series of transactions for res judicata purposes, and (ii) these plaintiffs could have brought their *pari passu* claims in their prior cases.  Under a straightforward application of the applicable law, the Court must answer both questions in the affirmative and dismiss the Post-Judgment Plaintiffs' actions.

*First*, because, as plaintiffs know, sovereign defaults and restructurings are inextricably interconnected, the Post-Judgment Plaintiffs' prior and current claims plainly arise from the same set of related facts and form a convenient trial unit that "conforms to the parties' expectations."  *Smith*, 54 N.Y.2d at 193.  As plaintiffs cannot contest, both the original claims and the new *pari passu* claims are based on the same profound Republic crisis, which began in 1998 and reached its nadir in 2001, the same resulting default on the Republic's external indebtedness, and the same contract – the 1994 FAA.  *See UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 927 N.Y.S.2d 59, 65 (1st Dep't 2011) (claims "related to the same business deal and to the diminution in the value of the securities . . . [following] that deal . . . form[ed] a convenient trial unit").  While the Post-Judgment Plaintiffs' assert that their *pari passu* claims should be treated as distinct from their prior claims for past due principal and interest because they rely on purportedly "different" facts concerning the Republic's sovereign debt restructuring, including the Republic's issuance and servicing of the Exchange Bonds, *see* Pls. Br. at 29-30, as plaintiffs are aware, that restructuring was the necessary and inevitable result of the Republic's default, and it would be totally artificial to try to separate them.

14

As plaintiffs know, every sovereign that adheres to international practice and United States policy conducts a debt restructuring after defaulting on its external indebtedness, and the Republic was clear from the very beginning that its default here would conform to that standard.  *See* U.S. Br. at 7 (Ex. G) ("In those rare cases where a sovereign cannot meet its external obligations . . . the policy of the United States is that the orderly and consensual restructuring of sovereign debt, in conjunction with needed macroeconomic adjustments, is the most appropriate response.").  Only nine days after the Republic declared a payment moratorium on its external indebtedness on December 23, 2001, the Republic announced on January 1, 2002 – before any of these plaintiffs brought any of their prior actions against the Republic – that it had delegated to the Executive Branch the power to "restructure the public debt."  *See* Law 25,565, art. 6, dated Mar. 6, 2002 (Ex. AA) (quoting Law 24,156).  Two months later the Republic reaffirmed its restructuring plans in its budget law, where it stated that "[t]he National Executive Branch, acting through the Ministry of Economy and Infrastructure, will begin all steps to restructure the public debt pursuant to the terms of Law 24,156, article 65, in order to adjust its payments to the National Government's payment capacity."  *See id.*; *see also* Presidential Decree 256/2002, dated Feb. 6, 2002 (Ex. BB) (authorizing Ministry of the Economy "to take all steps and actions necessary to restructure the obligations of the National Government").

This immediately-expressed intent to restructure was no secret to these plaintiffs, who noted in the earliest complaints filed in their prior actions that "Argentina had begun to negotiate with a committee representing a select group of holders of its foreign debt to restructure that debt."  *See*, *e.g.*, Compl. ¶ 18, *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (S.D.N.Y. Apr. 10, 2003) (Ex. X).  Even were a plaintiff somehow unaware of the

Republic's public statements and actions concerning its restructuring plans, the Republic's contemporaneous communication of those plans to the Court from day one put them on notice. *See* Hr'g Tr. at 23:4-8; 19:16-19, *Applestein, et al. v. Republic of Argentina,* No. 02 Civ. 1773 (TPG) (S.D.N.Y. Sept. 5, 2002) (Ex. Z) (counsel for the Republic stating that it was "certainly the hope of Argentina" to enter into a debt restructuring and that "[w]hat normally happen[s in sovereign restructurings] is a negotiation and at the end of the day there is a deal which emerges which tends to deal with the various classes of debt"); Hr'g Tr. at 7:2-25, *Applestein, et al. v. Republic of Argentina,* No. 02 Civ. 4124 (TPG) (S.D.N.Y. Apr. 24, 2003) (Ex. W) (counsel for the Republic explaining that the "traditional way you [make payments to creditors in the wake of a financial crises] is enter into overall restructuring which obviously provides for interest being paid on either old obligations or on new exchange obligations [and t]hat's what the Republic is trying to do").

The Republic's restructuring, although not finalized until some time later, was thus not an unexpected, unrelated event, as plaintiffs would have the Court believe.  *See* Pls. Br. at 29-30.  Rather, it was plainly part of a single interconnected series of transactions involving the Republic's 1994 FAA external indebtedness.  Plaintiffs knew, from before they brought their prior actions, that the Republic would conduct a restructuring and that their *pari passu* claims, which seek the precise relief as their claims for principal and interest, would be based on that restructuring.  They are accordingly wrong to argue now that the treatment of their prior and current claims as a single unit would not conform to the parties' "expectations."  Pls. Br. at 30-31; *see also Smith*, 54 N.Y.2d at 193 ("Though embellished by later events, both [claims] originate from the identical agreement.  Each spans the period between the initiation and termination of Smith's career at Russell Sage.  The chief participants in the relevant events are

the same . . . . [and] the motivation, vindication of Smith's claim that the discharge was

wrongful, is the same."); *UBS Sec. LLC*, 927 N.Y.S.2d at 65 (where claims were related to the

attempted issuance of debt and a related restructuring "it can hardly be said that the claims in the

two actions are so unrelated that reasonable business people, not to mention the parties

themselves, would have expected them to be tried separately").[15]

      It is irrelevant to this analysis that the Post-Judgment Plaintiffs rely on a different

legal theory in their belated second actions, because they are seeking to use that theory to obtain

"what is essentially the same relief" – payment in full on their defaulted debt. *O'Brien*, 54

N.Y.2d at 357.  Under New York law, "[w]here alternative theories are available to recover what

is essentially *the same relief* for *harm arising out of . . . related facts . . .* the circumstance that

the theories involve materially different elements of proof will not justify presenting the claim by

two different actions." *Ellis v. Abbey & Ellis*, 742 N.Y.S.2d 225, 227 (1st Dep't 2002) (quoting

*O'Brien*, 54 N.Y.2d at 357) (emphasis added).

      Here, there can be no question that the relief sought in both plaintiffs' prior and

current actions is the same – indeed, this Court has already recognized, in the context of an

attempt to "enforce" a *pari passu* clause in a sovereign debt instrument, that "despite their

invocations of a purported *pari passu* clause, plaintiffs have but *one cause of action*:  a right to

payment on the [] bonds." *Pons v. People's Republic of China*, 666 F. Supp. 2d 406, 414-15

(S.D.N.Y. 2009) (emphasis added); *see also id.* (plaintiffs "failed to state a separate equitable

cause of action" because their *pari passu* claims were, at bottom, based on the same initial

---

[15]  Plaintiffs argue that "throughout this litigation the Court and the parties have treated violations of the Pari Passu Clause as an independent claim, separate and apart from the breach of contract claims that resulted in Plaintiff's judgments." Pls. Br. at 30; *see also id.* at 31 n.8.  Apart from the fact that the Republic's res judicata and merger arguments date back to 2003 alone refutes plaintiffs' assertion, that the *pari passu* clause has been a part of this litigation from the very beginning demonstrates not that the claims are separate, but rather that they are inextricably linked.  As the Republic makes clear here, both claims relate to a single cause of action stemming from the Republic's alleged nonpayment under the 1994 FAA Bonds.

wrong:  defendant's default on the bonds).  Plaintiffs – under express New York law – simply

may not first sue for damages and entry of final judgment and then later sue for injunctive relief

with respect to the same cause of action.  *See id.*; Siegel, *supra* § 447 ("If, for example, P sues D

in ejectment because of an encroachment and wins judgment, but cannot enforce the judgment

because of a recalcitrant sheriff, P cannot thereafter sue for equitable relief (hoping for a

judgment that would make the defendant remove the encroachment himself)." (summarizing the

facts of *Hahl v. Sugo*, 169 N.Y. 109 (1901)); *see also Hellstern v. Hellstern*, 279 N.Y. 327, 331-

32 (1938) (plaintiff could not maintain a second suit at law to recover money damages where she

secured a judgment in her first suit in equity to recover the same amount of money).

   *Second*, plaintiffs plainly could have brought their *pari passu* claims in their prior

actions, because the facts purportedly giving rise to them – such as the passage of the Lock Law

on February 10, 2005 – occurred before plaintiffs filed their complaints (or, in some instances,

before summary judgment was entered).  *See* Pls. Br. at 29 (noting that the Lock Law breached

the *pari passu* clause).  Specifically:

- 247 Post-Judgment Plaintiffs, who hold over $3.8 billion in judgments, filed their first complaints *after* the Lock Law was passed.  *See* Post-Judgment Plaintiffs Chart (Ex. B).

- 246 Post-Judgment Plaintiffs, who hold close to $800 million in judgments, filed their first complaints prior to the Lock Law's enactment, but obtained final judgment *after* its passage.  *See* Post-Judgment Plaintiffs Chart (Ex. B).[16]

---

[16] Another five Post-Judgment Plaintiffs, who hold over $700 million in judgments, both filed their complaints and obtained final judgment prior to the Lock Law's enactment, namely Allan Applestein TTEE FBO D.C.A. Grantor Trust, EM Ltd., Kalbermann, Lightwater Corp. Ltd. and Old Castle Holdings, Ltd.  EM Ltd. argues that this demonstrates that its new action is not barred by res judicata.  *See* Mem. of Law in Supp. of Pl's Mot. for Partial Summ. J., *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG), ECF No. 9 (S.D.N.Y. Feb. 4, 2015).  However, all of these plaintiffs, including EM Ltd., knew that the Republic would one day restructure its debt, *see supra* at 14-16, and have acknowledged that the *pari passu* clause was raised as an issue in this litigation at its earliest stages.  Pls. Br. at 31 n.8; *see also* Compl. ¶ 18, *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG) (S.D.N.Y. Apr. 10, 2003) (Ex. X) (noting that "Argentina had begun to negotiate with a committee representing a select group of holders of its foreign debt to restructure that debt").  These plaintiffs thus cannot

Res judicata applies to both of these categories of Post-Judgment Plaintiffs. There can be no dispute at all about the doctrine's application to the former, because those plaintiffs clearly could have brought their current, duplicative claims in their prior complaints against the Republic. *See UBS Sec. LLC*, 927 N.Y.S.2d at 64 (to the extent claims in new complaint implicated events that took place prior to filing of original complaint, res judicata applied). Plaintiffs' assertion that they somehow could not have done so – notwithstanding that their prior complaints were filed *up to six years after* the first alleged *pari passu* clause breach – defies logic. This substantial period of time after which plaintiffs could have brought *pari passu* claims also demonstrates that their reliance on *Export-Import*, *see* Pls. Br. at 27, is misplaced. There, Judge Baer – applying federal law, instead of the New York law analysis described above – held that res judicata would not bar a plaintiff's second cause of action (seeking *pari passu* relief) where the "first alleged breach" occurred only "a mere fourteen days" prior to the filing of the plaintiff's first cause of action. *Export-Import*, No. 13 Civ. 1450, 2013 WL 4414875, at *3 (S.D.N.Y. Aug. 19, 2013). Beyond the decision's erroneous application of federal law, that logic does not apply at all to these Post-Judgment Plaintiffs, who filed their first actions *more* than two weeks (and in some cases as many as six years) after the first alleged breach occurred.[17]  Those plaintiffs plainly had sufficient time to include *pari passu* claims in their prior complaints, yet neglected to do so.

---

plausibly claim now that they were not on notice that a *pari passu* claim would arise under their misreading of the provision in their original action.

[17] Nor can *Export-Import* be reconciled with Judge Holwell's decision in *Pons*, where, as noted above, the Court stated that claims for principal and interest and *pari passu* claims constitute "one cause of action" because both seek "a right to payment on the [] bonds." 666 F. Supp. 2d at 414-15. *Pons* demonstrates the incorrectness of plaintiffs' contention that their previous complaints for money damages "were based on a different 'set of wrongs'" that is "far removed from Argentina's 2001 default." Pls. Br. at 29-30. In *Pons*, *nearly 60 years had elapsed* since the People's Republic of China's original default, but the court nonetheless, correctly, rejected plaintiffs' assertion that the *pari passu* claims were distinct. *Pons*, 666 F. Supp. 2d at 414.

With respect to the second category of Post-Judgment Plaintiffs, which is comprised of plaintiffs who filed their prior complaints before the Lock Law was enacted but obtained summary judgment after that date, plaintiffs may be correct that in some instances there is no obligation to amend a complaint to add a new claim after the relevant underlying facts arise, but in this context, where plaintiffs are trying to sue again for the same "economic loss," they *are* so obligated, and they are accordingly barred by res judicata from bringing their additional claims at a later time if they do not.  *See Kinsman v. Turetsky*, 21 A.D.3d 1246, 1257 (3d Dep't 2005) ("Although plaintiff contends that his claim for economic loss had not yet accrued at the time that the prior action was commenced, the record reveals that . . . plaintiffs could have moved to amend the complaint to add that cause of action . . . . Inasmuch as plaintiffs instead commenced a new action based upon the same transaction, res judicata operates to bar this claim.").  Furthermore, even if these plaintiffs did not have "full knowledge . . . of all the facts necessary" to support a *pari passu* claim when they filed their first complaints, they certainly "knew of facts showing at least the possibility of such claims."  *HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*, No. 07 Civ. 553A, 2009 WL 385474, at *14 (W.D.N.Y. Feb. 12, 2009), *aff'd sub nom.*, *In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011).

The Post-Judgment Plaintiffs are wrong to argue that they could not have brought their *pari passu* claims in their prior actions because *additional* facts allegedly constituting *further* breaches of the *pari passu* clause may have arisen after they filed their complaints.  *See* Pls. Br. at 32.  Even if such additional facts did arise thereafter, numerous alleged Republic acts that plaintiffs now claim constitute violations of the *pari passu* clause occurred *before* they filed their original complaints – for example, enactment of the Lock Law on February 10, 2005 and the first interest payment to Exchange Bondholders in June 2005.  Under New York law, that is

20

sufficient to bar the Post-Judgment Plaintiffs' claims here, as "the proper inquiry for res judicata

purposes is when [plaintiff] could have *raised* a cause of action, not when it had enough

evidence to prove the claim at trial." *U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*,

34 Misc. 3d 1231(A), 950 N.Y.S.2d 494 (Sup. Ct. N.Y. Cnty. 2012) (internal quotation marks

omitted) (alterations and emphasis in original), *aff'd*, 105 A.D.3d 639 (1st Dep't 2013).  Because

plaintiffs need only have "sufficient" knowledge (not "complete" or "perfect" knowledge) to

bring all of their claims in their original complaints, they are barred from bringing additional,

related claims now. *Id.*; *see also Mudholkar v. Univ. of Rochester*, 261 F. App'x 320, 322 (2d

Cir. 2008) ("Allegations challenging the continuing disparate effects of discriminatory conduct,"

where such discriminatory conduct had occurred prior to the filing of the first action, "do not

constitute allegations of a new violations [sic]"); *Jean-Gilles v. Cnty. of Rockland*, 463 F. Supp.

2d 437, 454 (S.D.N.Y. 2006) ("[T]he doctrine [of res judicata] applies to facts learned after the

filing of the earlier complaint when such facts are merely 'additional examples of the earlier-

complained of conduct.'").

    At bottom, these new actions seek to bring claims that could have been brought in

prior proceedings, which is precisely what the doctrine of res judicata is designed to prevent.  As

the New York Court of Appeals has pointed out, "[c]onsiderations of judicial economy as well as

fairness to the parties mandate, at some point, an end to litigation." *Matter of Reilly v. Reid*,

45 N.Y.2d 24, 28 (1978).  The Post-Judgment Plaintiffs cannot be permitted to litigate in

perpetuity what are ultimately the same claims against the Republic.  Their motions for summary

judgment must therefore be denied.

*                    *                    *

Even if the Court does not dismiss these claims as a matter of law – which it
should – the Post-Judgment Plaintiffs' motions for partial summary judgment must still be
denied because material issues of disputed fact remain. *Vivenzio v. City of Syracuse*, 611 F.3d
98, 106 (2d Cir. 2010) (district court may only grant summary judgment when, on the basis of
"undisputed facts, 'the movant is entitled to judgment as a matter of law'") (quoting Fed. R. Civ.
Pr. 56(c)(2)).  Among other things, the Republic has disputed the Post-Judgment Plaintiffs'
assertion that they could not have brought their *pari passu* claims in their prior actions, including
because many of the Post-Judgment Plaintiffs filed their complaints long after they now allege
the *pari passu* clause was violated.  To the extent the Court does not dismiss their claims now on
res judicata grounds, the Republic is accordingly entitled to the opportunity to seek discovery
from the Post-Judgment Plaintiffs concerning this and any other unresolved issue of fact,
including discovery of plaintiffs' litigation strategy and whether they in fact knew that they could
bring such claims, but strategically elected not to do so.  *See Freeman v. Marine Midland Bank-
New York*, 419 F. Supp. 440, 449 (E.D.N.Y. 1976) (reserving res judicata decision until "further
factual development of the record" occurred).

**B.    The Post Judgment Plaintiffs' Claims Are Barred By The Doctrine Of
Merger**

The Post-Judgment Plaintiffs' effort to tack on to their judgments a *pari passu*
claim is also barred by the merger doctrine, which "prevent[s] successive actions on the same
cause." *Jay's Stores, Inc. v. Ann Lewis Shops, Inc.*, 15 N.Y.2d 141, 147 (1965).  Under New
York's merger doctrine, if a judgment is entered in an action to enforce a contract, the relevant
contract terms "merge" into the judgment upon its entry and "no action can afterwards be
maintained on [the contract], so long as the judgment remains unreversed and in full force and

effect." *Mallory v. Leach*, 23 How. Pr. 507, 508-09 (Sup. Ct. N.Y. Cnty. 1862); *see also Craven v. Rigas*, 85 A.D.3d 1524, 1528 (3d Dep't 2011) ("Because the promissory note merged into the prior judgment plaintiff is precluded from enforcing his rights under the note through this action . . . To the extent that he seeks to enforce the prior judgment, plaintiff's recourse is an action on the judgment."), *appeal dismissed*, 17 N.Y.3d 932 (2011); 30 Williston on Contracts § 76:52 (4th ed. 2014) (noting that a judgment renders contract rights "extinct[]").   The terms of the FAA, including the *pari passu* clause, are thus no longer operative for the Post-Judgment Plaintiffs who hold judgments, and their motions must be denied.[18]  *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York and federal law is that a debt created by a contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives.") (citing *Marine Mgt., Inc. v. Seco Mgmt., Inc.*, 176 A.D.2d 252, 252 (2d Dep't 1991), *aff'd*, 80 N.Y.2d 886).

The Post-Judgment Plaintiffs are wrong that "'merger' is nothing more than another word for res judicata."  Pls. Br. at 33.  The cases cited above plainly apply merger as a distinct doctrine.  *See, e.g.*, *Craven*, 85 A.D.3d at 1527 (holding in 2011 that second suit seeking injunctive relief was barred by merger doctrine following initial suit on defaulted promissory note that was reduced to money judgment).  Moreover, plaintiffs' assertion mistakenly relies on federal law, but as noted above, *state law* – under which the merger doctrine indisputably remains applicable – governs the analysis here.  In fact, certain of the Post-Judgment Plaintiffs have repeatedly tried to change New York State law to expressly bar the merger doctrine's application in the sovereign context, precisely because they recognize that it conflicts with their

---

[18] In three Post-Judgment Plaintiff actions, *NML IV*, *NML VI*, and *NML VII*, NML has obtained summary judgment but not final judgment, and thus the merger doctrine does not apply to those current claims.

litigation strategy.  *See, e.g.*, Bill S3767-2011, March 3, 2011 (Ex. L).  Those efforts have all

failed, leaving the doctrine intact here to bar the Post-Judgment Plaintiffs' claims.[19]

      The Post-Judgment Plaintiffs are also incorrect to contend that the logic of the

fifty-year old *Jay's Stores* case prevents merger from applying here.  *See* Pls. Br. at 33 (citing

*Jay's Stores* and Siegel, *supra* § 450 for the same proposition).  The court narrowly held there

that a forum selection clause in a debt instrument does not merge into a judgment on the

underlying debt, reasoning that the doctrine of merger "does not destroy all of the identifying

characteristics" of the underlying obligation.  *Jay's Stores*, 256 N.Y.2d at 147.  Here, however,

the Post-Judgment Plaintiffs do not seek to enforce an "identifying characteristic" of the

underlying bonds they hold (such as a service provision, forum selection clause or other

procedural device) in order to vindicate, through an action on the judgment, contractual rights

that are already reduced to final judgment.  Rather, they are seeking to enforce a clause that they

claim entitles them to the very same relief that they have already reduced to judgment – payment

in full on their debt.  New York's merger doctrine bars precisely these types of duplicative

claims and requires the denial of the Post-Judgment Plaintiffs' motions.

    **C.**    **Under Any Interpretation Of The *Pari Passu* Clause, There Is No Breach With Respect To The Post-Judgment Plaintiffs**

      Even were the Court to allow the Post-Judgment Plaintiffs to now litigate claims

otherwise barred by res judicata and merger, those claims would still fail for the simple reason

that there has been no *pari passu* clause breach with respect to the money judgments they hold.

      The *pari passu* clause states in relevant part that the "payment obligations of the

Republic *under the Securities* shall at all times rank at least equally with all its other present and

---

[19] Although state law governs here, even if federal law applied, the claims of all plaintiffs who hold judgments would be barred by merger.  *See, e.g.*, *Amaprop Ltd. v. Indiabulls Financial Services Ltd.*, Nos. 10 Civ. 1853, 11 Civ. 2001 (PGG) (JCF), 2012 WL 4801452 (S.D.N.Y. Oct. 5, 2012) ("[T]he provisions of a contract no longer govern the relationship between the parties once a contract claim has been reduced to judgment.").

future unsecured and unsubordinated External Indebtedness." 1994 FAA ¶ 1(c) (Ex. CC) (emphasis added). The FAA in turn expressly defines "Securities" to mean "notes, securities, debentures or other evidence of indebtedness" issued by the Republic. *Id.* ¶ 1(a). To the extent the provision requires any "equality," it is *only* with respect to the payment obligations of the Republic that arise out of the 1994 FAA Bonds themselves. *See NML I*, 699 F.3d at 259 (*pari passu* clause "prohibits Argentina, as bond payor, from paying on other bonds without paying *on the FAA bonds*") (emphasis added); Joint Resp. Br. of Pls.-Appellees NML Capital, Ltd. and Olifant Fund, Ltd. at 23, *NML Capital, Ltd. v. Republic of Argentina*, No. 12 Civ. 105 (L) (2d Cir. Jan. 25, 2013) ("Argentina's 'payment obligations,' in turn, are the amounts that it is obligated to pay at a particular time *under the agreements' payment provisions*.") (emphasis added). Accordingly, regardless of the meaning of "rank" within the *pari passu* clause, there can be no dispute that the Republic is under no obligation to rank any of its "payment obligations" equally with its External Indebtedness, unless those "payment obligations" derive from the 1994 FAA Bonds.

Here, with respect to the Post-Judgment Plaintiffs, the Republic's "payment obligations" stem from their money judgments and not from the 1994 FAA Bonds, because under black letter law the contractual debt owed by the Republic under the 1994 FAA Bonds extinguished upon the judgments' entry. *See, e.g.*, *Westinghouse Credit Corp.*, 371 F.3d at 102. This conclusion does not hinge on whether the Court determines that the merger doctrine applies to bar plaintiffs' claims. Rather, it is the necessary result of the fact that plaintiffs' money judgments supplanted any "payment obligations" that the Republic had under the 1994 FAA Bonds and that the *pari passu* clause was expressly drafted to apply only to indebtedness falling

25

under the defined term "Securities," which does *not* include any judgments on those securities.[20]

Clearly the Republic is not obligated to pay plaintiffs under the 1994 FAA Bonds themselves, at the same time that it is obligated to pay plaintiffs the same amount, plus statutory interest, under the subsequently entered judgments. *See CIBC Bank and Trust Co. (Cayman) Ltd. v. Banco Central do Brasil*, 886 F. Supp. 1105, 1113-17 (S.D.N.Y. 1995) (rejecting creditor's request for court to adopt interpretation of contract provision contradicted by plain language of applicable agreement).

The denial of the Post-Judgment Plaintiffs' motions is thus mandated by the text of the *pari passu* clause, and cannot be overridden on "equitable" grounds. Regardless, aside from being the necessary result of applying the provision's plain language, the denial of declaratory relief to the Post-Judgment Plaintiffs *is* equitable because it is the product of the strategic choice that they made. In choosing to obtain final judgments, plaintiffs made a conscious trade-off to forgo the ability to bring these additional claims, instead electing to pursue legal remedies, such as execution, that would have otherwise been unavailable to them without judgments. Similar tradeoffs are made on a regular basis by creditors, including when they elect to forego higher pre-judgment interest rates in exchange for the entry of judgments and the possibility of execution. While plaintiffs may now be dissatisfied with the result of their decision, it is solely the consequence of their litigation strategy, and in no way warrants re-

---

[20] Notwithstanding that none of the prior actions concerning the *pari passu* clause involved claims that had been reduced to judgment, the summary judgment Orders entered there state that "the Republic's payment obligations on the bonds include its payment obligations . . . on judgments entered pursuant to judicial action by bondholders." Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Dec. 7, 2011) (Ex. K). That statement is plainly not binding in these proceedings. The issue of whether "payment obligations under the Securities" could be extended beyond its plain language, in a manner contrary to black letter law, to also mean "payment obligations under judgments" "certainly was not 'necessary to support'" the Court's orders in those pre-judgment actions, nor did the parties "actually litigate[]" the issue or have a "full and fair opportunity" to do so, as it was not even before the Court. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91-92 (2d Cir. 1997).

writing the contract at issue in order to grant them relief to which they previously may have been entitled (however, as explained below, *see supra* III.C, plaintiffs were not so entitled).

## II. TWENTY-THREE PLAINTIFFS' MOTIONS MUST BE DENIED BECAUSE THEY HAVE NOT ADEQUATELY DEMONSTRATED THAT THEY OWN THE BOND INTERESTS THEY PURPORT TO HOLD

### A. Twenty Pre-Judgment Plaintiffs Have Not Submitted The Requisite Proof of Ownership

Separate and apart from the merits of their claims, the Court must deny the motions of 20 of the 28 Pre-Judgment Plaintiffs, because they have failed to present sufficient evidence that they currently own the 1994 FAA bonds that they purport to hold.

Eighteen of these plaintiffs[21] submitted no evidence at all of ownership, other than unsupported declarations that include statements to that effect. *See, e.g.*, Decl. of Elliott Greenberg ¶ 4, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8988 (TPG) (S.D.N.Y. Feb. 6, 2015), ECF No. 11 (vice president of NML's parent's investment management firm stating without evidentiary support that "NML is the beneficial owner of the bonds referenced in the Complaint in this action"); Decl. of Michael C. Spencer ¶¶ 51-52, *Foglia, et al. v. Republic of Argentina*, No. 14 Civ. 8243 (TPG) (S.D.N.Y. Feb. 20, 2015), ECF No. 8 (plaintiffs' counsel stating: "to the best of my information and belief, Moving Plaintiffs herein remain beneficial owners of their Bonds as alleged in the complaint"). These unsubstantiated assertions are plainly insufficient to establish ownership under the Rules of Evidence and the procedures established by this Court. *See* Mem. from Hon. Judge Thomas P. Griesa to Counsel (S.D.N.Y. Feb. 22 2007) (plaintiffs must submit evidence sufficient to prove their ownership of beneficial interests in Republic debt) (Ex. T); *Mazzini v. Republic of Argentina*, No. 03 Civ. 8120 (TPG), 2005 WL

---

[21] *See NML Capital, Ltd.*, No. 14 Civ. 8988 (TPG); *Foglia*, No. 14 Civ. 8243 (TPG); *Pons, et al.*, 13 Civ. 8887 (TPG); *Guibelalde, et al.*, 11 Civ. 4908 (TPG); *Dorra, et al.*, 14 Civ. 10141 (TPG); *Beloqui, et al.*, 14 Civ. 5963 (TPG); *Tortus Capital Master Fund, LP*, 14 Civ. 1109 (TPG); *Tortus Capital Master Fund, LP*, 14 Civ. 3127 (TPG); and *Lambertini, et al.*, 15 Civ. 1471 (TPG).

743090, at *4 (S.D.N.Y. Mar. 31, 2005) (requiring as proof of ownership in these cases "a properly executed declaration *and* an account statement" (emphasis added)).

In addition, while plaintiff Trinity Investments Limited claimed to attach evidence of current bond ownership to its Complaint, it failed to do so.  *See* Decl. of Anthony J. Costantini ¶ 4, *Trinity Investments Limited v. Republic of Argentina*, No. 14 Civ. 10016 (TPG) (S.D.N.Y. Feb. 26, 2015), ECF No. 9 ("A record of Trinity's holdings of 1994 FAA bonds is attached as Exhibit B to the Complaint dated December 18, 2014.").  And plaintiff Attestor Master Value Fund LP submitted only a record of bond ownership that is dated as of August 18, 2014, almost seven months prior to its motion, which is well beyond the five-month age limit for proof of ownership by which the parties in this litigation have always abided.  *See* Am. Compl. at Ex. B, *Attestor Master Value Fund LP v. Republic of Argentina*, No. 14 Civ. 5849 (TPG) (S.D.N.Y. Aug. 19, 2014), ECF No. 7-3; *Colella v. Republic of Argentina*, No. 04 Civ. 2170 (TPG), 2006 WL 399449, at *2 (S.D.N.Y. Feb. 21, 2006) (denying summary judgment where purported proof of ownership was dated five months before motion was filed).[22]

The Court must deny all of these plaintiffs' motions.

**B.   The GMO Plaintiffs' Motions Must Be Denied Because The 1994 FAA's *Pari Passu* Clause Does Not Apply To Their Bonds**

The motions of Post-Judgment Plaintiffs GMO Emerging Country Debt L.P., GMO Emerging Country Debt Investment Fund PLC, and GMO Emerging Country Debt Fund (together, the "GMO Plaintiffs") must also be denied because they do not hold bonds issued pursuant to the 1994 FAA – which contains the *pari passu* clause at issue here.

---

[22] Plaintiffs' motions in *Capital Mkts. Fin. Servs., Inc., et al.*, No. 15 Civ. 0710; *Lambertini, et al.*, No. 15 Civ. 1471; *Angulo, et al.*, No. 15 Civ. 1470; and *Dorra, et al.*, No. 14 Civ. 10141, should be rejected for the additional reason that they are premature, as they were filed before the Republic's responses to their complaints were due.  *See* 28 U.S.C. § 1608(d).

While the GMO Plaintiffs claim in their complaint to hold 1994 FAA Bonds, stipulations so-ordered by the Court in their prior actions make clear that those bonds were tendered in connection with the Republic's 2010 Exchange Offer. *See, e.g.*, Stipulation and Order to Amend J., *GMO Emerging Country Debt L.P. v. Republic of Argentina*, No. 05 Civ. 10380 (TPG) (S.D.N.Y. Aug. 25, 2010), ECF No. 76 (Ex. O) (bond bearing ISIN XS0043119147 – which was issued under the USD Discount and Par Bond Fiscal Agency Agreement dated April 7, 1993 ("1993 FAA") – is the only bond in which plaintiffs continue to hold interests); *see also* Answer to Compl. ¶¶ 12, 13, *GMO Emerging Country Debt L.P. v. Republic of Argentina*, No. 14 Civ. 10380 (TPG) (S.D.N.Y. Dec. 30, 2014), ECF No. 6 (plaintiffs' bond was issued under 1993 FAA, not 1994 FAA).[23]

It is black letter law that one who is neither a party to, nor a beneficiary of, a contract has no basis to bring a claim on that contract. *See Wells Fargo Bank Nw., N.A. v. Energy Ammonia Transp. Corp.*, No. 01 Civ. 5861 (JSR), 2002 WL 1343757, at *1 (S.D.N.Y. June 18, 2002) (where "defendants are neither parties to, nor third-party beneficiaries of, the [contract] they lack standing to bring a [contract] claim"). Plaintiffs, who do not hold 1994 FAA Bonds, necessarily cannot sue to enforce their rights under the 1994 FAA. *Id.*

---

[23] *See also* Stipulation and Order to Amend J., *GMO Emerging Country Debt Inv. Fund PLC. v. Republic of Argentina*, No. 05 Civ. 10382 (TPG), ECF No. 73 (S.D.N.Y. Aug. 25, 2010) (Ex. P); Stipulation and Order to Amend J., *GMO Emerging Country Debt Fund. v. Republic of Argentina*, No. 05 Civ. 10383 (TPG), ECF No. 74 (S.D.N.Y. Aug. 25, 2010) (Ex. Q).

### III.   ALL PLAINTIFFS ARE OTHERWISE NOT ENTITLED TO THE SUMMARY JUDGMENT ORDERS THEY SEEK

#### A.   Plaintiffs' Motions Must Be Denied To The Extent They Exceed The Second Circuit's Prior Rulings In This Litigation

In its October 2012 opinion affirming the Court's finding that the Republic was in breach of the *pari passu* clause, the Court reasoned that its decision would not have an overly destructive effect on future sovereign debt restructurings in part because its ruling that the Republic breached the provision relied on the Republic's "entire course of conduct here," *NML I*, 699 F.3d at 264 n.16, including the aggregate "combination of Argentina's executive declarations and legislative enactments," *id.* at 260.  To avoid any ambiguity, the Second Circuit expressly stated that it did *not* hold that any single payment to the Exchange Bondholders without a "ratable" payment to plaintiffs was a breach of the *pari passu* clause, *NML I*, 699 F.3d at 264 n.16, or that "'legislative enactment' alone" could breach the provision.  *Id.*  This limited ruling was consistent with *NML's own position* in the Second Circuit, where it stated to the Court of Appeals that this Court in its prior *pari passu* orders had "never held that a 'single payment' could violate the [*pari passu* clause]."  Corrected Joint Resp. Br. of Pls.-Appellees, NML Capital, Ltd., Olifant Fund, Ltd., and Varela, et al. at 37, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105(L) (2d Cir. Apr. 23, 2012); *see also id.* at 32 ("The district court did not address whether the [*pari passu* clause] could be violated by a single payment . . . . The district court instead looked to the case before it – which did not involve a 'single payment' – and held that" Argentina's conduct violated the provision).

Notwithstanding NML's prior position to the contrary and the plain language of the Court of Appeals, which makes clear that individual Republic payments to Exchange Bondholders and the Republic's enactment of a single law do not constitute breaches of the *pari passu* clause under the court's decision, plaintiffs now ask this Court to make those precise

erroneous findings.  Specifically, plaintiffs ask the Court to declare – in direct contradiction to

the Second Circuit's ruling – that "each discriminatory payment [to the Exchange Bondholders]

constitutes a separate, actionable breach of the Clause," Pls. Br. at 21, and that various individual

laws, including the so-called Lock Law, "subordinated the rank" of plaintiffs' bonds in breach of

the provision, *id.* at 23.  The Court should reject plaintiffs' attempt to improperly exceed the

scope of the Second Circuit's ruling.

              For all of the reasons stated in this litigation in the prior briefing of the Republic

and the United States, among others, plaintiffs' theory that a single payment on restructured debt

or that the enactment of a single law could violate the *pari passu* clause is contrary to New York

law and United States policy, and as the Second Circuit recognized, would threaten the

sustainability of sovereign debt restructurings going forward.[24]  *See* Mem. of Law in Opp'n to

Pl.'s Mots. for Partial Summ. J. and for Injunctive Relief Pursuant to the *Pari Passu* Clause at

18-31, *NML Capital Ltd., v. Republic of Argentina*, No. 08 Civ. 06978 (TPG) (S.D.N.Y. Dec. 10,

2010) (Ex. M); U.S. Br. at 10-21 (Ex. G); *see also* U.S. En Banc Br. at 1-5 (Ex. E).[25]  As the

Republic has previously noted, plaintiffs' erroneous theory, Pls. Br. at 26, relies on a law

professor's declaration – submitted in *ex parte* proceedings in Belgium – that cited no relevant

caselaw, would have been inadmissible in a New York court, and is directly contradicted by the

views of expert practitioners who were responsible for drafting sovereign debt agreements with

*pari passu* clauses.  *See* Troland Link Decl. ¶ 15, *LNC Invs. LLC v. Republic of Nicaragua*, Folio

2000 1061, R.K. 240/03 (Commercial Ct. of Brussels) (Ex. Y).  Just as this Court and the Second

---

[24]  Although limited in this respect, the Second Circuit's ruling has endangered future sovereign debt restructurings in a material way.

[25]  Rather than repeat all of the Republic's and United States' arguments showing the impropriety of plaintiffs' theory, the Republic attaches the relevant briefing as Exhibits M, G, and E.

Circuit declined to adopt this aspect of plaintiffs' incorrect theory in connection with the prior *pari passu* orders, the Court should do so again here.

> **B.    The Republic's Arguments Are Not Barred By Collateral Estoppel**

Contrary to plaintiffs' assertion, Pls. Br. at 17-20, the Republic is not barred by collateral estoppel from contesting plaintiffs' attempt to overreach beyond the Second Circuit's decision.  As plaintiffs acknowledge, collateral estoppel only prevents a party from challenging the entry of an order where, *inter alia*, "the issues in both proceedings are *identical*."  *Id.* at 17 (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (emphasis added)).  Here, the issues now before the Court are clearly not "identical" to those determined in prior proceedings, as plaintiffs ask the Court to greatly expand the breadth of its prior *pari passu* orders in a manner not contemplated by the Court of Appeals.  *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991) ("Issues that may bear the same label are nonetheless not identical if the standards governing them are significantly different.")  The Republic is accordingly not collaterally estopped from opposing plaintiffs' pending motions, which must be rejected to the extent they exceed the Second Circuit's ruling.[26]

> **C.    The Republic Has Not Breached The *Pari Passu* Clause As It Has Long Been Understood By The Market**

Separate and apart from the foregoing deficiencies, the Court should deny plaintiffs' motions in their entirety because the Republic has not breached the *pari passu* clause under the provision's true meaning.  Notwithstanding the prior rulings in this litigation, the Republic maintains – in the absence of any New York State court ruling on the issue at all, let alone a binding decision by the New York Court of Appeals – that the Second Circuit's reading

---

[26]  To the extent plaintiffs' raise new arguments that certain alleged Republic's acts constitute violations of the *pari passu*, *see, e.g.,* Pls. Br. at 18 (arguing, for the first time, that the Republic's enactment of Law Nos. 26,886 and 26,984 violated plaintiffs' *pari passu* rights), the Republic is certainly not collaterally estopped from challenging those claims.

of the *pari passu* clause runs contrary to New York law and market understanding both here and abroad (including the views of the IMF and the United Nations).

As made clear by the submissions of not only the Republic, but also the United States, France, Brazil, Mexico, Professor Joseph Stiglitz, former IMF Deputy Director Anne Krueger, and the New York Clearing House Association – among many others – the *pari passu* clause, as it had always been understood prior to this Court's ruling, prohibits only a creditor's involuntary legal subordination of debt that is subject to the clause to certain of the creditor's other indebtedness. *See* Br. for the Republic of France as *Amicus Curiae* in Supp. of the Republic of Argentina's Pet. For a Writ of Cert. at 1, *Republic of Argentina v. NML Capital, et al.*, No. 13-990 (Mar. 24, 2014) ("[T]he well-settled mainstream market understanding [is] that a *pari passu* clause does not covenant that all payments will be made by a borrower ratably with the borrower's other unsubordinated debts, but rather provides protection against legal subordination of claims only[.]") (Ex. D); Br. of the Federative Republic of Brazil as *Amicus Curiae* in Supp. of Pet'r at 6, *Republic of Argentina v. NML Capital, et al.*, No. 13-990 (Mar. 24, 2014) ("[P]articipants in sovereign bond markets, including Brazil, have long understood *pari passu* clauses to protect bondholders solely from legal subordination[.]"); Br. of the United Mexican States as *Amicus Curiae* in Supp. of Pets. for Writs of Cert. at 2, *Republic of Argentina v. NML Capital, et al.*, No. 13-990 (Mar. 24, 2014) (characterizing the Second Circuit's interpretation of the *pari passu* clause as "unprecedented" and stating that it results in "increasing holdout leverage, [ ] creating incentives for holdouts to pursue windfall profits at the expense of exchange offer participants, and [ ] discouraging exchange offer participation for fear that holdouts will be able to interrupt the payment of restructured debt"); Br. of Joseph Stiglitz as *Amicus Curiae* in Supp. of Pet'r at 5-6, *Republic of Argentina v. NML Capital, et al.*, No. 13-990

(Mar. 24, 2014) (while *pari passu* clauses have "long been [ ] standard term[s] in sovereign debt contracts," the Second Circuit's interpretation of them is novel and "will have a severely negative impact on the public interest, in this case and in a wide array of sovereign debt restructurings, past and future"); *see also* Br. for *Amicus Curiae* Professor Anne Krueger in Supp. of the Republic of Argentina and Reversal at 11-16, *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105 (L) (2d Cir. Jan. 4, 2013); Br. for *Amicus Curiae* the Clearing House Association L.L.C. in Supp. of Reversal at 4-5, No. 12-105 (L) (2d Cir. Apr. 4, 2012) (Ex. H).

No such involuntary subordination has occurred here, including with respect to the Exchange Bonds.  Plaintiffs elected *voluntarily* not to participate in the Exchange Offers that they now claim produced a preferred class of creditors, and the fact that plaintiffs have not been paid and that the Republic has made statements to that effect is not, and has never been considered to be, a "subordination" of creditor rights.

The Second Circuit's erroneous ruling to the contrary stems from a false distinction that the Court made between the *pari passu* clause's two sentences:

> The first sentence ("[t]he Securities will constitute . . . direct, unconditional, unsecured, and unsubordinated obligations . . . .") prohibits Argentina, as bond *issuer,* from formally subordinating the bonds by issuing superior debt.  The second sentence ("[t]he payment obligations . . . shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness.") prohibits Argentina, as bond *payor,* from paying on other bonds without paying on the FAA Bonds.  Thus, the two sentences of the *Pari Passu* Clause protect against different forms of discrimination:  the issuance of other superior debt (first sentence) and the giving of priority to other payment obligations (second sentence).

*NML I*, 699 F.3d at 259 (emphasis in original).

Apart from contradicting market understanding and practice, that reading of the provision is unsupported by its plain language.  Notably, the Court omitted from its analysis of the first sentence the key language making clear that its "ranking" requirement applies only

"*among [the 1994 FAA Bonds] themselves*," and thus necessarily does not apply to the Republic as "bond issuer" in connection with any *other* debt that the Republic might issue in the future. 1994 FAA ¶ 1(c) (Ex. CC) (emphasis added).  With respect to the 1994 FAA Bonds alone, the Republic plainly *did* rank them equally, as both the Republic's default and the terms of its Exchange Offers applied equally to all FAA bondholders.  Thus, even if legislative acts and declaratory statements concerning the non-payment of the 1994 FAA Bonds could constitute "subordination" – which they cannot – there was no basis for the Second Circuit to hold that they constituted a violation of the *pari passu* clause here simply because *other* later-issued debt, *i.e.*, Exchange Bonds, were not subject to similar legislative acts and statements.

Nor is there any basis for the Second Circuit's reading of the latter sentence – which *does* concern other, non-FAA indebtedness – as barring Argentina from servicing its Exchange Bonds.  The Second Circuit read the phrase "payment obligations" as indicating that the second sentence addresses the Republic as bond *payor*, rather than as bond issuer, reasoning that otherwise the court would have failed to give effect to the differences between the two sentences.  *NML I*, 699 F.3d at 259.  But the distinction between the first and second sentences is that they require equal ranking of different groups of indebtedness – 1994 FAA Bonds (first sentence) and other External Indebtedness (second sentence), *not* that they address the Republic in different capacities (bond *issuer* vs. bond *payor*).  The operative word in the second sentence is plainly "rank," which makes clear that the clause bars the formal subordination of the 1994 FAA Bonds to certain other debt (which, as noted above, did not occur here) and is not, as the Second Circuit wrongly held, a promise to pay on the 1994 FAA Bonds if the Republic makes payments on other bonds.

While the Second Circuit tried to limit the impact of its novel reading of the *pari passu* clause by emphasizing that even plaintiffs argued that payments to multilateral institutions, like the Paris Club, would not violate the provision because the market understands them to be preferred creditors, *id.* at 260, it could not undo the broader harm of its ruling.  Neutral observers around the world have recognized that the Court's interpretation of the provision is erroneous and threatens the stability of sovereign debt restructurings going forward.  For example, in an October 2014 report focusing the market's concern about the Amended Injunctions, the IMF observed that "[t]he general reaction to the New York Court Decisions demonstrates that a wide array of commentators and interested parties have concerns that these decisions may, in fact, have a broad impact on the restructuring process."  *See* IMF, *Strengthening the Contractual Framework to Address Collective Action Problems in Sovereign Debt Restructuring* 12 (Oct. 1, 2014).  The IMF explained:

> [S]ince the type of remedy provided to the holdout creditors in the New York Court Decisions enhances the leverage of holdouts, these decisions have increased the risk that holdouts will multiply, as they now have the ability to extract a preferential recovery outside of a debt exchange. . . . In addition, because the New York Court Decisions increase the risk that holdout creditors will be able to interrupt the flow of payments to [restructuring creditors], there would be an even greater disincentive for creditors to participate in the restructuring.

*Id.* at 11-12.

Separately, the United Nations General Assembly recently sought to limit the Amended Injunctions' impact and to reaffirm international practice by passing a resolution, supported by 124 nations, aimed at preventing such orders from being entered again.  The express goal of the resolution is to "adopt through a process of intergovernmental negotiations . . . a multilateral legal framework for sovereign debt restructuring processes with a view . . . to increasing the efficiency, stability and predictability of the international financial system."  *See*

36

G.A. Res. 68/304, U.N. Doc. A/RES/68/304 (Sept. 17, 2014) (Ex. C).  Even if plaintiffs were otherwise entitled to the orders they seek, the Court should therefore decline plaintiffs' invitation to enter even more orders that threaten additional harm to the Republic, third parties (including the Exchange Bondholders), and the broader system of debt restructuring.

Apart from their destructive nature, such orders would not be productive in bringing about a resolution of this litigation even in plaintiffs' view, as unlike the Court's prior orders, they would not be enforceable through specific performance injunctions.  As an initial matter, while the Second Circuit found that the FSIA did not prohibit entry of the Amended Injunctions in the pre-judgment context, here, in the post-judgment context, any new injunctions would clearly function as judgment execution devices that run afoul of the FSIA, which renders presumptively immune from execution all foreign state property that is not being used in the United States for a commercial activity here.  *See NML I*, 699 F.3d at 262 (pre-judgment injunctions not subject to FSIA Section 1609 immunity because they do not attach or execute upon Republic property); 28 U.S.C. §§ 1609, 1610(a).

Notwithstanding that most of the Post-Judgment Plaintiffs initiated new actions separate from the ones in which they hold their money judgments, the relief that they seek is plainly in aid of enforcing those judgments – indeed, there is no other reason for them to have brought their *pari passu* claims.  Any injunctions entered in their actions would seek to coerce the Republic to pay the Post-Judgment Plaintiffs the full amount they are owed under their money judgments.  The FSIA is clear that in that context, such orders are barred unless they are directed at non-immune property – which in this case does not exist.  *See Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 280 (2d Cir. 2011) (affirming dismissal of

petition for turnover order "[t]o the extent the petition sought assets beyond the scope of the exception to immunity from execution set forth in 28 U.S.C. § 1610(a)(2)").

Plaintiffs would also not be able to establish the requisite equitable basis for any new *pari passu* injunctions.  *See Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 211 (2d Cir. 2012) ("[I]t must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.") (citation omitted).  The Court reasoned that the prior injunctions compelling the Republic to pay plaintiffs in certain actions 100% of the principal and interest owed to them were equitable because the Republic "ha[d] the financial wherewithal" to both make that payment and service its restructured debt.  Order at 3, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012) (Ex. I).  But while plaintiffs there may have been able to plausibly argue that the Republic could afford to pay them the approximately $1.6 billion they claimed to be owed, plaintiffs here – who will demand an additional $5.4 billion, not including millions more in interest, on top of that $1.6 billion – plainly cannot make that same showing.  The Republic's reserves currently stand at approximately $31 billion.  No sovereign, including the Republic, can afford to deplete by 25% its fiscal reserves – which must be used for critical macroeconomic purposes – without exposing its economy to significant hardship.  Thus, even if summary judgment were warranted here – which it is not – plaintiffs' motions should still be denied because any such orders would not be enforceable by injunction and would not lead to the resolution of these litigations that all parties and the Court desire.[27]  Rather, they would only reward plaintiffs' disruptive holdout strategy

---

[27]  Plaintiffs cite to the law of the case doctrine.  *See* Pls. Br. at 20 n.6.  Even if the doctrine applied here – which it does not – the current motions, which could result in demands for an additional payment of $5.4 billion by the Republic, must be denied to "prevent manifest injustice."  *See Johnson v. Holder*, 564 F.3d 95, 100 (2d Cir. 2009).

and make it substantially more difficult for sovereigns facing financial crisis in the future from successfully following universally accepted norms and voluntarily restructuring their debts.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions should be denied.

Dated: New York, New York
March 17, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: __/s/ Carmine Boccuzzi_____
Jonathan I. Blackman (jblackman@cgsh.com)
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for the Republic of Argentina

Of Counsel:

Elizabeth C. Block
Michael M. Brennan
Elizabeth M. Hanly